UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AURELIANO MENDEZ DIAZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 3:16-CV-05328-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") committed harmful error by improperly discounting the opinions of Plaintiff's treating physician. Therefore, this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

## PROCEDURAL & FACTUAL HISTORY

On May 31, 2013, Plaintiff filed applications for DIB and SSI. *See* Dkt. 11, Administrative Record ("AR") 248-262. Plaintiff alleges he became disabled on May 31, 2008, due to a back injury, hernia, diabetes, and neck injury. *See* AR 248, 288. Plaintiff's applications were denied upon initial administrative review and on reconsideration. *See* AR 77-78, 101-02. A hearing was held before an ALJ on November 26, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 43. During the hearing, Plaintiff amended his disability onset date to June 16, 2011. AR 47.

On December 22, 2014, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 26. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 25, 2016, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 6, 20 C.F.R. § 404.981, § 416.1481. On May 3, 2016, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ: 1) failed to account for all of Plaintiff's severe impairments; 2) improperly determined Plaintiff did not meet or medically equal a listing; 3) improperly evaluated the medical opinion evidence; 4) improperly discounted Plaintiff's subjective symptom testimony; and 5) failed to support the Step Five determination with substantial evidence. Dkt. 13, p. 2.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.  Whether the ALJ Erred by Failing to Consider Plaintiff's Plantar Fibromatosis to be a Severe Impairment at Step Two of the Sequential Evaluation.

**A. Standard**

At Step Two of the sequential evaluation, the ALJ must determine if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2015) . *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted). Impairments must result "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). A medically determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c), 416.920(a)(4)(iii) & (c); *see also* SSR 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

1         The Step Two inquiry, however, is merely a threshold determination as to whether a

2  claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076

3  (9th Cir. 2007). *See also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the Step

4  Two determination is a *de minimis* screening device used to dispose of groundless claims).

5  "Ample authority cautions against a determination of nondisability at step two." *Ortiz v.*

6  *Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655 (9th Cir. 2011) (*citing Bowen v. Yuckert*,

7  482 U.S. 137, 153 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d

8  at 1290. An impairment or combination of impairments may be found "not severe only if the

9  evidence establishes a slight abnormality that has no more than a minimal effect on an

10 individual's ability to work." *Smolen*, 80 F.3d at 1290.

11        **B.  Application of Standard**

12        Here, the ALJ found Plaintiff had the severe impairments of: mild lumbar degenerative

13 disc disease with congenital spinal stenosis and slight scoliosis; bilateral inguinal hernias, status-

14 post surgical repair; diabetes mellitus; left shoulder bursitis; and hypertension. AR 18. However,

15 Plaintiff argues the ALJ failed to consider his diagnosis of plantar fibromatosis (foot lesions) to

16 be a severe impairment at Step Two of the sequential evaluation. Indeed, Plaintiff argues the ALJ

17 entirely failed to discuss his plantar fibromatosis at any point in the written decision.

18        The record reflects Plaintiff has had palpable nodules on the plantar aspect of his right

19 foot as early as February, 2008. AR 402. These nodules increased in size and became painful

20 over time. AR 506-07, 517, 540. Radiologists Brian Kim, M.D., and David Stoller, M.D. opined

21 these painful nodules were likely plantar fibromatosis. AR 542.  Ultimately, the soft tissue

22 masses on his foot were surgically removed in February, 2010. AR 540. Based on this record,

23 Plaintiff has presented enough evidence to demonstrate he had the medically determinable

24

impairment of plantar fibromatosis. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) ("[Social Security Ruling ("SSR") 96-6p] provides that a medical opinion offered in support of an impairment must include 'symptoms [and a] *diagnosis*.'")(citing SSR 96-6p, *available at* 1996 WL 374180, at *1) (emphasis added).

Defendant argues the ALJ properly discounted Plaintiff's plantar fibromatosis because Plaintiff did not demonstrate this condition lasted for a consecutive twelve month period. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). However, the Court is constrained to review the reasoning actually offered by the ALJ, not create *post hoc* rationalizations which attempt to intuit what the ALJ might have been thinking. *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). In any event, the records cited by Defendant reflect Plaintiff may very well have had this condition for nearly two years. *See* AR 402, 506-07, 517, 540. Thus, the ALJ's failure to discuss Plaintiff's plantar fibromatosis at all in the written decision, let alone explain why it did not constitute a severe impairment at Step Two, was error.

However, identifying an error in the written decision does not end this Court's inquiry. Despite the ALJ's failure to discuss Plaintiff's plantar fibromatosis in the written decision, Plaintiff nonetheless prevailed at Step Two and the ALJ proceeded on through the remaining steps of the sequential evaluation. AR 14. Plaintiff bears the burden of demonstrating how any error is harmful. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). An error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004))..

Plaintiff's amended disability onset date is June 16, 2011. However, Plaintiff's plantar fibromatosis was surgically corrected in February, 2010. AR 540. By April, 2010, the surgical

site was well-healed, and his sensation was grossly intact, without evidence of nerve entrapment or paresthesias on palpation. AR 510. Plaintiff was returned to full weight bearing to tolerance at that time. AR 510. Plaintiff has not cited, nor can the Court find, any records indicating Plaintiff's plantar fibromatosis impacted Plaintiff's ability to perform basic work activities or had more than a minimal effect on Plaintiff's ability to work after Plaintiff's disability onset date. *Smolen*, 80 F.3d at 1290. *See Hickman v. Comm'r, Soc. Sec. Admin.*, 399 Fed.Appx. 300, 302 (9th Cir. 2010) (holding there was substantial evidence in the record indicating a reading disorder purportedly excluded from the list of claimant's severe impairments would not have disqualified the claimant from performing the jobs testified to by the vocational expert). Thus, the ALJ's omission of Plaintiff's plantar fibromatosis from the list of severe impairments at Step Two of the sequential evaluation was "inconsequential to the ultimate nondisability determination," and does not constitute a basis for reversing the ALJ's decision. *Molina*, 674 F.3d at 1117.

Nonetheless, because the ALJ erred in evaluating the medical evidence, as discussed in Section II, below, the ALJ should reevalute Plaintiff's plantar fibromatisis diagnosis on remand to determine whether it constitutes a severe impairment at Step Two of the sequential evaluation.

II.     Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

   **A. Standard**

The ALJ has the responsibility to determine credibility and resolve ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Determining whether or not inconsistencies in the medical evidence "are material (or are

1  in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of

2  medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

3  F.3d 595, 603 (9th Cir. 1999).

4      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

5  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

6  821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

7  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

8  examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

9  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

10 *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ

11 can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

12 clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at

13 725 (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own

14 interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing*

15 *Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without

16 explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*,

17 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir.

18 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence."

19 *Flores*, 49 F.3d at 571.

20     **B.  Application of Standard**

21     The ALJ assigned Plaintiff the residual functional capacity ("RFC") to perform light

22 work, subject to additional limitations, including restrictions for sitting for no more than six

23 hours in an eight-hour work day, standing or walking no more than six hours in an eight-hour

24

workday, and stooping or climbing no more than frequently. AR 19. Plaintiff argues this RFC finding was erroneous, as the ALJ improperly rejected the more restrictive limitations opined to by Dr. David M. Lush, and improperly gave great weight to the opinions of several examining physicians and one non-examining consulting physician.

1. *David M. Lush, M.D.*

Dr. Lush was Plaintiff's treating physician throughout the period at issue in the ALJ's decision. Throughout the course of his four years of treatment, Dr. Lush rendered nineteen opinions as to Plaintiff's limitations and RFC:

- In November, 2010, Dr. Lush opined Plaintiff would be unable to sit, stand/walk, climb, twist, bend/stoop, or squat/kneel more than one hour per eight-hour workday, and could lift objects no more than one hour per eight-hour workday. AR 839.

- In December, 2010, Dr. Lush opined Plaintiff was less physically restricted than his earlier opinion, but declined to release him to work and instead recommended Plaintiff undergo an Independent Medical Examination ("IME"). AR 840.

- In January, 2011, Dr. Lush opined Plaintiff would be able to stand no more than two hours per eight-hour workday, would be able to lift no more than 10 lbs on an occasional basis and would be unable to frequently lift any weight. AR 727.

- On fifteen occasions between June, 2011 and March, 2014, Dr. Lush completed check-the-box forms identifying largely the same limitations described above, and declining to release Plaintiff to work. AR 841-855.

- In November, 2014, Dr. Lush opined Plaintiff could lift 20 lbs occasionally, 10 lbs frequently, could not walk, stand, or sit more than two hours in an eight-hour work day, could only occasionally twist, stoop, crouch, climb stairs, balance, kneel, crawl, would have impaired ability to reach, push, and pull, and opined Plaintiff's limitations would cause him to be absent from work more than four days per month. AR 856-59.

The ALJ gave Dr. Lush's nineteen opinions as to Plaintiff's functional limitations little weight for essentially the same three reasons. First, the ALJ found all but two of Dr. Lush's opinions were "intended to be temporary and provided conservative restrictions pending additional study,

rather than an earnest assessment of the claimant's abilities." AR 23-24. Second, the ALJ found Dr. Lush's opinions were inconsistent with IME reports contained in the record, which were based on objective testing. AR 23-24. Finally, the ALJ found all of Dr. Lush's opinions appeared to be based on Plaintiff's subjective complaints, which the ALJ had discounted. AR 23-24. Specifically, the ALJ noted Dr. Lush previously documented "signs of significant functional overlay in his own notes". AR 24, (citing AR 677).[1] Plaintiff argues none of these reasons were specific and legitimate reasons, supported by substantial evidence, for discounting a treating physician's opinions in favor of the less restrictive opinions of examining and consulting physicians. The Court agrees.

The ALJ's first reason for discounting Dr. Lush's opinions—seventeen of them were temporary and provided for conservative restrictions pending further study—is not a specific legitimate reason supported by substantial evidence. As a threshold matter, the Court notes the ALJ's reasoning here is conclusory, and unsupported by citations to the record. An ALJ must give "specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be *sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling ("SSR") 96-2P, *available at* 1996 WL 374188 (emphasis added). The ALJ's unsupported, conclusory statements do not satisfy this standard. *See, e.g.*, *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (citing *Embrey*, 849 F.2d at 421).

---

[1] Functional Overlay is "a state of affairs in which a person claims to be suffering from physical injury, but the doctor is satisfied that the symptoms are not the manifestation of any organic physical pathology, but are instead a manifestation only of the individual's psychological state." *Smith v. Astrue*, 2012 WL 2912658, at *5, n.1 (M.D. Fla., June 25, 2012).

Further, an ALJ can, in certain circumstances, discount an opinion formulated by a physician when the physician has not had an opportunity to review the longitudinal record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (noting consistency with the record as a whole is an important factor when an ALJ weighs a medical opinion). *Cf.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (noting a physician's mistaken belief in the existence of a significant medical fact was a specific and legitimate reason for discounting the physician's opinion). However, in this case, the ALJ ignores the fact Dr. Lush rendered *seventeen* opinions over a four-year period using the same form and opining to essentially the same functional limitations. *See* AR 839-55. Rather than indicating Dr. Lush's opined limitations were intended to be temporary pending further study and treatment as the ALJ concluded, the persistence of these same limitations in Dr. Lush's opinions over four-years is compelling evidence Dr. Lush's opinion of Plaintiff's functioning was, in fact, an "earnest assessment of Plaintiff's abilities." *See* AR 23-24.

Similarly, the ALJ's second reason for discounting Dr. Lush's opinions—they are inconsistent with the opinions of other doctors who performed objective testing—is not a specific and legitimate reason supported by substantial evidence. Dr. Lush has been Plaintiff's treating physician for several years, and his treatment notes reflect he has performed numerous physical examinations of Plaintiff. *See, e.g.,* AR 680, 683, 690, 693, 696, 713, 719, 784, 798, 810. These examinations also included clinical observations and objective testing. The mere fact other doctors' opinions in the record are also supported by objective testing does not automatically invalidate Dr. Lush's examination findings. *See Ryan v. Commissioner of Social Sec. Admin*, 528 F.3d 1194, 1200 (9th Cir. 2008) ("Nothing in [one examining doctor's report] rules out [another examining doctor's] more extensive findings") (*quoting Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999). In any event, the fact

an examining physician disagrees with the conclusions of a treating physician is not a sufficient reason to discount the opinion of a treating physician; an ALJ must articulate specific and legitimate reasons for giving a treating physician's opinion less weight. *See Nguyen*, 100 F.3d at 1466; *Reddick*, 157 F.3d at 725.

Finally, the ALJ's third reason for discounting Dr. Lush's opinions—Dr. Lush based his opined limitations on Plaintiff's subjective complaints—is not a specific and legitimate reason, supported by substantial evidence. AR 23-24. An "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014).  As discussed above, Dr. Lush was Plaintiff's treating physician and conducted numerous physical examinations throughout his treatment. During these examinations, he documented tenderness to palpation in Plaintiff's lumbar spinal area, as well as reduced range of motion in Plaintiff's low back. *See, e.g.*, AR 680, 683, 690, 693, 696, 713, 719, 784, 798, 810. The ALJ does not explain how these examination results and clinical observations fail to support Dr. Lush's opinion, nor does the ALJ explain how these treatment records indicate Dr. Lush's opinions were based entirely on Plaintiff's subjective complaints.

To support his reasoning, the ALJ cites to one treatment note dated after Dr. Lush had rendered sixteen of his opinions. On January 11, 2013, Dr. Lush indicated Plaintiff presented with "severe function overlay [with] normal range of motion and reflexs [sic]" on examination for his low back pain. AR 677.  But, rather than citing this record as evidence of an inconsistency between Dr. Lush's opinions and his treatment notes, the ALJ concludes this note demonstrates

Dr. Lush relied on Plaintiff's subjective symptom testimony. However, nothing about this note indicates Dr. Lush relied on Plaintiff's subjective symptom testimony more than his independent clinical observations and examination results. Though Dr. Lush documented functional overlay during this one examination, he also documented tenderness in Plaintiff's lumbar spine, as well as mild pain with motion. AR 676.  Contemporaneous treatment notes made by Dr. Lush also indicate Plaintiff had reduced range of motion in his lumbar spine. *See, e.g.*, AR 680. A sole treatment note which post-dates all but three of Dr. Lush's nineteen opinions, and does not expressly or impliedly state Dr. Lush based those three opinions largely on Plaintiff's subjective symptom complaints, does not constitute substantial evidence.

Because the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Lush's opinions, the ALJ erred. Further, Dr. Lush opined to substantially more restrictive limitations than the ALJ included in his RFC finding. Thus, the error is not "inconsequential to the ultimate nondisability determination," and requires remand. *Molina*, 674 F.3d at 1117.

> 2. *Independent Medical Examination Doctors*

Plaintiff also argues the ALJ erred by giving great weight to the opinions of several examining physicians in the record.

During the period at issue, Plaintiff had been examined by various medical sources who conducted IMEs in conjunction with Plaintiff's contemporaneous worker's compensation claim. *See* AR 635-45; 767-76; 860-75. The ALJ gave great weight to these opinions, and noted they reflected a "normal orthopedic examination from an objective point of view with marked pain behavior and functional limitations which are present. There is no evidence that would restrict Mr. Diaz's ability to work." AR 24, 874. The ALJ also noted many of the IMEs contained

evidence of symptom exaggeration, including positive Waddell's signs.[2] AR 20-21, 24-25 (citing AR 643, 775, 867).

Plaintiff argues the IME physicians were biased against Plaintiff becausetheir opinions were obtained by Plaintiff's employer in order to defend against Plaintiff's worker's compensation claim. Dkt. 13., pp. 8-9. However, the Ninth Circuit has unambiguously held "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. Further, an examining physician's opinion constitutes substantial evidence "because it rests on his [or her] own independent examination . . . ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Absent some evidence of "actual improprieties" in the IME physicians' evaluation—which Plaintiff does not cite, nor can the Court find—the ALJ was not required to assume the IME physicians' were biased against Plaintiff simply because the opinions were rendered in the context of a contested worker's compensation claim. *Lester*, 81 F.3d at 832 (quoting *Ratto v. Secretary*, 839 F.Supp. 1416, 1426 (D. Or. 1993)).

### 3.   *Alnoor Virji, M.D.*

Dr. Virji reviewed Plaintiff's medical records on November 1, 2013. AR 124-25. Dr. Virji opined Plaintiff would be capable of lifting and carrying up to 20 pounds on an occasional basis, frequently lifting and carrying up to 10 pounds, sitting for up to six hours in an eight-hour work day; standing and/or walking for up to six hours in an eight-hour work day, and would be limited to frequent climbing and stooping. AR 124-25. The ALJ gave this opinion great weight, as it was consistent with the records available to Dr. Virji at the time it was made. AR 24. The

---

[2] "Physicians use Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain." *Reinertson v. Barnhart*, 127 Fed.Appx. 285, 289 (9th Cir. 2005) (citing Gordon Waddell et al., *Nonorganic Physical Signs in Low–Back Pain*, 5 Spine 117, 118 (Mar.-Apr.1980); see also 5 Attorneys' Textbook of Medicine ¶ 15A.83 (Roscoe N. Gray and Louise J. Gordy eds., 3d ed. 2000)).

1  ALJ adopted all of Dr. Virji's opined limitations into the RFC. AR 24. However, the ALJ also
2  noted, subsequent to Dr. Virji's review of the records, Plaintiff was diagnosed with left shoulder
3  bursitis. AR 24. Based on this, the ALJ imposed additional reaching limitations beyond what Dr.
4  Virji opined in order to account for this condition.

5  Plaintiff argues the ALJ erred by giving great weight to Dr. Virji's opinion, as it is
6  against "the great weight of the evidence" in the record. Dkt. 13, p. 9. However, a non-examining
7  medical consultant's opinion constitutes substantial evidence where it is consistent with other
8  evidence in the record. *Tonapetyan*, 242 F.3d at 1149. Here, Dr. Virji cited to the minimal
9  imaging findings to substantiate the extent of Plaintiff's pain, and referenced the positive
10 Waddell's sign findings contained in the various IME physician's examination reports. AR 125.
11 This evidence is consistent with Dr. Virji's opinion, and the ALJ was entitled to rely upon Dr.
12 Virji's opinion in assessing Plaintiff's RFC. Nonetheless, as the ALJ erred in evaluating Dr.
13 Lush's opinions, the ALJ should reevaluate Dr. Virji's opinion on remand.

14     III.    <u>Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by Substantial Evidence, for Discounting Plaintiff's Subjective Symptom Testimony.</u>

15
16 If an ALJ finds a claimant has a medically determinable impairment which reasonably
   could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the
17 ALJ may reject the claimant's testimony only "by offering specific, clear and convincing
18 reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12
19 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility
20 for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*
21 *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7
22 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one
23 rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence
24

1  in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair,*
2  885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the
3  evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's
4  decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a
5  credibility determination where that determination is based on contradictory or ambiguous
6  evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for
7  discrediting a claimant's testimony should properly be discounted does not render the ALJ's
8  determination invalid, as long as that determination is supported by substantial evidence.
9  *Tonapetyan*, 242 F.3d at 1148.

10  Here, the ALJ discounted Plaintiff's subjective symptom testimony by noting Plaintiff
11  had demonstrated positive Waddell's signs in multiple different medical examinations. AR 22
12  (citing AR 643, 773, 775, 871). This was proper. Medical evidence indicating a claimant is
13  exaggerating his or her symptoms is a clear and convincing reason for discounting a claimant's
14  subjective symptom testimony. *See Hamilton v. Comm'r, Soc. Sec. Admin.*, 368 Fed.Appx. 724,
15  726 (9th Cir. 2010) (citing *Tonapetyan*, 242 F.3d at 1148). The ALJ also properly considered
16  whether Plaintiff's testimony was consistent with the medical record as a whole. AR 20-25.
17  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully
18  corroborated by objective medical evidence, the medical evidence is still a relevant factor in
19  determining the severity of the claimant's pain and its disabling effects." *See Rollins v.*
20  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Further,
21  *inconsistencies* between a claimant's testimony and the medical evidence of record, rather than a
22  mere lack of support from the medical evidence, is a clear and convincing reason, supported by

substantial evidence, for giving less weight to a claimant's testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

However, an evaluation of a claimant's testimony also relies, in part, on an accurate assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As discussed in Section II, above, the ALJ erred in evaluating the opinion evidence from Plaintiff's treating physician. As this case must be remanded for further proceedings in any event, the ALJ should also reevaluate Plaintiff's credibility anew on remand.

IV. Whether the ALJ Properly Determined Plaintiff Did Not Meet or Equal a Listing.

Plaintiff argues the ALJ erred at Step Three of the sequential evaluation by failing to find he met or equaled the requirements for a listing contained in the Listing of Impairments ("Listings"). At Step Three, the ALJ considers whether one or more of the claimant's impairments has lasted or can be expected to last for not less than twelve months and is included in Appendix 1 of the listings, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets or equals a Listing, the claimant will be considered disabled without further inquiry.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Plaintiff bears the burden of proving he "has an impairment that meets or equals the criteria of an impairment listed" in Appendix 1 of 20 C.F.R. part 404, subpart P. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.; see also* Social Security Ruling

("SSR") 96–8p, 1996 WL 374184 *2 (a step three determination must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83–19, 1983 WL 31248 *2.

Here, Plaintiff argues his impairments meet or medically equal Listing 1.04(A), Disorders of the spine.[3] The ALJ's analysis of Plaintiff's listing argument, however, is conclusory at best. The ALJ found:

> Listings in section 1.00 have been evaluated, but the claimant does not have the criteria to meet or equal any of these listings. No treating or examining physician has reported clinical findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the [Listings].

AR 19. The ALJ does not cite to any medical evidence, nor does the ALJ consider each element of Listing 1.04(A) with specificity. This was error. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A

---

[3] Listing 1.04A requires Plaintiff to demonstrate he possessed:

- a disorder of the spine, ("e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture");

- which results in the "compromise of a nerve root (including the cauda equina) or the spinal cord";

- with "evidence of nerve root compression characterized by "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)"

20 C.F.R. pt. 404, Subpart P, app. 1, § 1.04(A).

boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990)). *See also Drotar v. Colvin*, 2015 WL 965626, at *4-7 (E.D.N.C., Mar. 4, 2015) (discussing an ALJ's failure to properly evaluate whether a claimant met or medically equaled the criteria of Listing 1.04(A)).

Plaintiff correctly notes the record contains evidence of reduced range of motion in his cervical and lumbar spine (AR 435-46, 625, 813); evidence of radiculopathy and neuropathy in his lower extremities (AR 472, 521, 682, 788), documented L5-S1 stenosis (AR 828), and bilateral positive straight leg raise tests in the supine position (AR 420, 869). On remand, the ALJ should evaluate whether Plaintiff has demonstrated his condition meets or medically equals the requirements of Listing 1.04(A).

## **CONCLUSION**

Based on the foregoing reasons, the Court finds the ALJ committed harmful error by failing to properly evaluate Dr. Lush's opinions. Therefore, the Court orders this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Plaintiff's severe impairments, reevaluate whether Plaintiff meets or medically equals the criteria for a Listing, reevaluate the medical opinion evidence, re-evaluate Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 9th day of December, 2016.

David W. Christel
United States Magistrate Judge